**FILED**

NOV 3 0 2009

Clerk, U.S. District and
Bankruptcy Courts

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>Department of Justice, Antitrust Division<br>450 5th Street, N.W., Suite 8700<br>Washington, D.C. 20530,<br><br>STATE OF MISSOURI<br>Office of the Attorney General<br>P.O. Box 899<br>Jefferson City, Missouri 65102, and<br><br>STATE OF NEBRASKA,<br>Office of the Attorney General<br>2115 State Capitol Building<br>Lincoln, Nebraska 68509-8920,<br><br>*Plaintiffs,*<br><br>v.<br><br>STERICYCLE, INC.<br>28161 North Keith Drive<br>Lake Forest, Illinois 60045,<br><br>ATMW ACQUISITION CORP.<br>28161 North Keith Drive<br>Lake Forest, Illinois 60045,<br><br>MEDSERVE, INC.<br>6575 West Loop South, Suite 145<br>Bellaire, Texas, 77401, and<br><br>AVISTA CAPITAL PARTNERS, L.P.<br>6575 West Loop South, Suite 145<br>Bellaire, Texas 77401,<br><br>*Defendants.* | CASE NO.:<br><br>JUDGE:<br><br>Case: 1:09-cv-02268<br>Assigned To : Bates, John D.<br>Assign. Date : 11/30/2009<br>Description: Antitrust<br><br>DATE STAMP: |

<u>**COMPLAINT**</u>

Plaintiff, the United States of America ("United States"), acting under the direction of the

Attorney General of the United States, and plaintiffs, the State of Missouri and the State of

Nebraska, acting under the direction of their respective Attorneys General, bring this civil antitrust action against defendants, Stericycle, Inc. and ATMW Acquisition Corp., and MedServe, Inc. and Avista Capital Partners, L.P. to enjoin Stericycle's proposed acquisition of MedServe and to obtain other equitable relief. Plaintiffs complain and allege as follows:

## I. NATURE OF THE ACTION

1.      Pursuant to an agreement and plan of merger dated May 9, 2009, Stericycle intends to acquire all of the voting shares of MedServe in a transaction valued at $185 million. Defendants Stericycle and MedServe currently compete in the provision of infectious waste collection and treatment services for large quantity generator ("LQG") customers. The resulting combination would create a monopoly in the provision of infectious waste collection and treatment services for LQG customers in the states of Missouri, Nebraska, Oklahoma, and Kansas.

2.      The United States, the State of Missouri, and the State of Nebraska bring this action to prevent the proposed acquisition because it would substantially lessen competition in the provision of infectious waste collection and treatment services for LQG customers in the states of Kansas, Missouri, Nebraska, and Oklahoma, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II. JURISDICTION AND VENUE

3.      The United States brings this action under Section 15 of the Clayton Act, as amended, 15 U.S.C. §§ 4 and 25, to prevent and restrain defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18. The State of Missouri and the State of Nebraska bring this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain defendants

2

from violating Section 7 of the Clayton Act, 15 U.S.C. § 18. The State of Missouri and the State of Nebraska, by and through their respective Attorneys General, or other authorized officials, bring this action in their sovereign capacities and as parens patriae on behalf of the citizens, general welfare, and economy of each of their states.

4. Defendants collect and treat infectious waste generated by LQG customers in the flow of interstate commerce. Defendants' activities in collecting and treating infectious waste substantially affect interstate commerce. The Court has jurisdiction over this action and over the parties pursuant to 15 U.S.C. § 22 and 28 U.S.C. §§ 1331 and 1337.

5. Defendants transact business, and have consented to venue and personal jurisdiction, in the District of Columbia. Venue is therefore proper in this District under Section 12 of the Clayton Act, 15 U.S.C. § 22 and 28 U.S.C. § 1391(c).

### III. **THE DEFENDANTS**

6. Defendant Stericycle, Inc. is a Delaware corporation with its principal place of business in Lake Forest, Illinois. Stericycle, a multi-national company, is the largest provider of infectious waste collection and treatment services in the United States, with operations in nearly all of the contiguous 48 states, including 46 treatment facilities and 80 transfer and collection sites. In 2008, Stericycle reported total worldwide sales of approximately $1.1 billion, of which approximately 78 percent were generated in the United States. ATMW Acquisition Corp. is a corporation formed by Stericycle to facilitate its acquisition of MedServe. Stericycle and ATMW hereinafter are collectively referred to as Stericycle.

7. Defendant MedServe is a Delaware corporation with its principal place of business in Bellaire, Texas. MedServe is the second-largest provider of infectious waste

collection and treatment services in the United States, with operations in 25 states that include eight treatment facilities and 18 transfer and collection sites. In 2008, MedServe had total revenues of about $35.6 million. Avista Capital Partners, L.P. is an entity formed by MedServe to facilitate the acquisition of MedServe by Stericycle. MedServe and Avista hereinafter are collectively referred to as MedServe.

## IV. <u>TRADE AND COMMERCE</u>

### A. The Relevant Service Market

8. Regulated medical waste is waste generated in the diagnosis, treatment, or immunization of human beings or animals. There are generally three types of regulated medical waste: (1) infectious waste; (2) pathological waste; and (3) trace chemotherapy waste. Infectious waste is waste that has come into contact with bodily fluids and "sharps" waste, such as syringes and scalpels. Pathological waste is anatomical parts, and trace chemotherapy waste is small amounts of chemical compounds used to treat cancer patients and the equipment used to administer the compounds. Infectious waste comprises approximately 90 percent of the regulated medical waste generated in the United States.

9. State and federal governments heavily regulate the collection and treatment of regulated medical waste. They prescribe how each type of regulated medical waste must be stored, collected, and treated. Providers of infectious waste collection and treatment services are required to be licensed by various state and federal regulatory agencies before they can offer such services.

10. Regulated medical waste must be stored separately from other types of waste, and each type of regulated medical waste must be stored separately from the other types in specially

marked and sealed containers. Collection and transport of regulated medical waste to treatment facilities must be performed by state-approved companies.

11. State-approved treatment facilities must be used to render regulated medical waste non-infectious. Failure to use state-approved treatment facilities subjects both the generator of the infectious waste and the infectious waste collection and treatment service provider to criminal prosecution, fines, damage actions, and potentially high clean-up costs.

12. Autoclaves are the most prevalent treatment technology for infectious waste. An autoclave uses steam sterilization combined with pressure to render infectious waste non-infectious. Because autoclaving is a reliable and long-proven technology, it has become the preferred choice for treating infectious waste.

13. The infectious waste collection and treatment services industry categorizes customers according to the amount of infectious waste they generate. LQG customers typically are hospitals, large laboratories, and other large medical facilities that generate large amounts of infectious waste. LQG customers often need collection to occur on a daily basis, or at least several times a week, and must receive continuous supplies of containers with sizeable storage capacity from their service providers.

14. LQG customers require their service providers to perform both infectious waste collection and treatment. They also require their providers to meet strict standards to ensure they have sufficient technical capability, knowledge, and financial resources. For example, an LQG customer typically requires an infectious waste collection and treatment service provider to have: (a) an adequate infrastructure to serve the customer's needs, including trucks, storage containers, transfer stations, electronic equipment capable of monitoring and tracking each type of waste,

5

and personnel with a variety of expertise to support the infrastructure; (b) an established reputation for providing reliable and timely collection and treatment for LQG customers; (c) its own infectious waste treatment facility to minimize the number of companies that handle the waste, thereby reducing the possibility that the waste is mishandled; and (d) substantial liability insurance that meets all federal and state regulatory requirements governing infectious waste.

15. Collection and treatment providers bid for each LQG customer's business separately, and an infectious waste collection and treatment service provider can identify the specific competitive conditions that apply to each LQG customer, including which potential competitors can serve that LQG customer. Infectious waste collection and treatment service providers for LQG customers can and do price discriminate based on an LQG customer's requirements and the number of other competitors available to provide such services.

16. A small but significant increase in the price of infectious waste collection and treatment services for LQG customers would not cause LQG customers to move sufficient volumes of infectious waste to another type of collection and treatment service so as to make such a price increase unprofitable.

17. Accordingly, the provision of infectious waste collection and treatment services for LQG customers is a line of commerce and a relevant price discrimination service market within the meaning of Section 7 of the Clayton Act.

**B.     The Relevant Geographic Market**

18.     The geographic market for the provision of infectious waste collection and treatment services for LQG customers is largely defined by transportation costs. Infectious waste collection and treatment companies rely on trucks to transport waste from customer sites to their treatment facilities. Transfer stations enable service providers to transfer their waste into tractor-trailers and more cost-effectively to transport their waste to treatment facilities. Typically, the greater the distance between an LQG customer's operations and the service provider's treatment or transfer facility, the less price competitive the provider is.

19.     For LQG customers served by MedServe in Kansas, Missouri, Nebraska, and Oklahoma, the only competitive alternative is Stericycle. In these states, no other infectious waste collection and treatment service provider has a facility located within approximately 300 miles of Stericycle's or MedServe's facilities.

20.     In the states of Kansas, Missouri, Nebraska, and Oklahoma, LQG customers would not switch to a more distant infectious waste collection and treatment service provider in sufficient numbers so as to make a small but significant increase in price unprofitable.

21.     Accordingly, the states of Kansas, Missouri, Nebraska, and Oklahoma are a relevant geographic market within the meaning of Section 7 of the Clayton Act.

**C.     Anticompetitive Effects of the Acquisition**

22.     In the states of Kansas, Missouri, Nebraska, and Oklahoma, the market for the provision of infectious waste collection and treatment services for LQG customers is highly concentrated. Following the acquisition, Stericycle would become the monopoly provider of infectious waste collection and treatment services for LQG customers in these states.

23. Vigorous price competition between Stericycle and MedServe in the provision of infectious waste collection and treatment services has benefited LQG customers in Kansas, Missouri, Nebraska, and Oklahoma. Stericycle and MedServe are each other's only rivals, directly competing on price and quality of service in the provision of infectious waste collection and treatment services for LQG customers.

24. Therefore, the proposed acquisition will eliminate the competition between Stericycle and MedServe; reduce the number of providers of infectious waste collection and treatment services for LQG customers from two to one; and enable Stericycle to establish a monopoly in the provision of such services, leading to higher prices and lower quality of service for LQG customers in Kansas, Missouri, Nebraska, and Oklahoma, in violation of Section 7 of the Clayton Act.

### D. Entry into Collection and Treatment of Infectious Waste Generated by LQG Customers

25. Successful entry into the provision of collection and treatment services for infectious waste for LQG customers in Kansas, Missouri, Nebraska, and Oklahoma would be difficult, time-consuming, and costly. A prospective provider of infectious waste collection and treatment services for LQG customers faces substantial financial and permitting requirements to build a facility and the infrastructure needed to serve LQG customers. It also must have an established reputation for handling the large amounts of infectious waste produced by LQG customers.

26. A provider of infectious waste collection and treatment services for LQG customers in Kansas, Missouri, Nebraska, and Oklahoma must establish a treatment facility that

8

contains a treatment technology, such as an autoclave, with sufficient capacity for treating large volumes of infectious waste. In addition to the capital costs of the treatment unit, local zoning and state permits are required.

27. A provider of infectious waste collection and treatment services for LQG customers also must have an infrastructure of trucks, transfer stations, and electronic equipment capable of collecting, transporting, treating and disposing, and monitoring and tracking the infectious waste.

28. A provider of infectious waste collection and treatment services for LQG customers must develop a reputation and record of reliably collecting and treating large volumes of infectious waste in compliance with state and federal regulations.

29. A provider of infectious waste collection and treatment services for LQG customers must have the financial capability to indemnify LQG customers for any environmental fines or accidents resulting from the collection, transportation, and treatment of the infectious waste.

30. Obtaining the necessary permits and building an autoclave facility, establishing the infrastructure to serve LQG customers, and developing a reputation and record of service and compliance would require in excess of two years.

31. Entry into the provision of infectious waste collection and treatment services for LQG customers in Kansas, Missouri, Nebraska, and Oklahoma would not be timely, likely, or sufficient to counter anticompetitive price increases or diminished quality of service that Stericycle could impose after the proposed acquisition.

## V. <u>VIOLATION ALLEGED</u>

32. The United States incorporates the allegations of paragraphs 1 through 31 above.

33. Stericycle's proposed acquisition of all of MedServe's voting securities and infectious waste collection and treatment assets in the states of Kansas, Missouri, Nebraska, and Oklahoma will substantially lessen competition and tend to create a monopoly in interstate trade and commerce in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

34. Unless restrained, the transaction will have the following anticompetitive effects, among others:

> a. actual and potential competition between Stericycle and MedServe in the provision of infectious waste collection and treatment services for LQG customers in the states of Kansas, Missouri, Nebraska, and Oklahoma will be eliminated;
>
> b. competition generally in the provision of infectious waste collection and treatment services for LQG customers in the states of Kansas, Missouri, Nebraska, and Oklahoma will be substantially lessened; and
>
> c. prices for infectious waste collection and treatment services for LQG customers in the states of Kansas, Missouri, Nebraska, and Oklahoma will likely increase, and service likely will be reduced.

10

## VI. <u>REQUESTED RELIEF</u>

35.    Plaintiffs request:

a.    That Stericycle's proposed acquisition of MedServe be adjudged and decreed to be unlawful and in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

b.    That defendants and all persons acting on their behalf be permanently enjoined and restrained from consummating the proposed acquisition of MedServe by Stericycle, or from entering into or carrying out any contract, agreement, plan, or understanding, the effect of which would be to merge the voting securities or assets of the defendants;

c.    That plaintiffs receive such other and further relief as the case requires and the Court deems just and proper; and

d.    That plaintiffs recover the costs of this action.

Dated: November 20, 2009

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA**

_____          _____
Christine A. Varney                                      Maribeth Petrizzi
Assistant Attorney General                          Chief, Litigation II Section
                                                                      D.C. Bar # 435204

11

_____
Molly S. Boast
Deputy Assistant Attorney General

_____
J. Robert Kramer II
Director of Operations

Dorothy B. Fountain
Assistant Chief, Litigation II Section
D.C. Bar # 439469

_____
Frederick H. Parmenter
Stephen A. Harris
Carolyn Davis
Leslie D. Peritz
Jay D. Owen
Attorneys
U.S. Department of Justice
Antitrust Division, Litigation II Section
450 Fifth Street, NW
Suite 8700
Washington, D.C.  20530
Tel:  (202) 307-0924
Fax:  (202) 307-6583
Email: Frederick.Parmenter@usdoj.gov

**FOR PLAINTIFF STATE OF MISSOURI**

Chris Koster
Attorney General

By:

Anne E. Schneider
Assistant Attorney General
State of Missouri
P. O. Box 899
Jefferson City, MO 65102
Tel: (573) 751-7445
Fax: (573) 751-2041
Email: Anne.Schneider@ago.mo.gov

**FOR PLAINTIFF STATE OF NEBRASKA**
Jon Bruning
Attorney General

By:

Leslie C. Levy
Assistant Attorney General
2115 State Capitol Building
Lincoln, NE 68509-8920
Tel.: (402) 471-2811
Fax: (402) 471-4725
Email: leslie.levy@nebraska.gov